IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO FELIZ,<br><br>          Petitioner,<br><br>     vs.<br><br>D. K. SISTO, Warden, California State Prison, Solano,<br><br>          Respondent. | No. 2:08-cv-01508-JKS<br><br>MEMORANDUM DECISION |

Armando Feliz, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus Relief under 28 U.S.C. § 2254. Feliz is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano. Respondent ("State") has answered the Petition. Feliz has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On May 24, 1984, Feliz was convicted upon a guilty plea in the Los Angeles County Superior Court of one count of Murder in the Second Degree (Cal. Penal Code § 187). The trial court sentenced Feliz to an indeterminate term of 15 years to life. Feliz does not challenge his conviction or sentence in this proceeding.

In August 2006 Feliz made his ninth or tenth appearance before the California Board of Parole Hearings, which denied him parole. Feliz timely filed a petition for habeas corpus relief in the Los Angeles Superior Court, which denied his petition in an unreported, reasoned decision. The California Court of Appeal summarily denied Feliz's subsequent petition for habeas corpus

relief in that court without opinion or citation to authority. The California Supreme Court summarily denied Feliz's petition for habeas relief in that court without opinion or citation to authority on April 30, 2008. Feliz timely filed his Petition for relief in this Court on May 27, 2008.

After briefing was completed, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward v. Marshall*.[1] At Docket No. 21 this Court entered an Order directing the parties to file supplemental briefs addressing the *Hayward* decision, in particular that "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."[2] The Court also directed the parties to consider two Ninth Circuit decisions applying *Hayward*.[3] Both parties have submitted supplemental briefing.

The facts underlying the crime, as recited by the Los Angeles Superior Court, are:

> [. . . .] The record reflects that petitioner had been involved in an abusive intimate relationship with the victim, who had physically assaulted petitioner in the past. They had previously lived together. On the night of the murder, petitioner met the victim at a bar. They returned to the victim's residence. Petitioner convinced the victim to disrobe. The victim then allowed petitioner to tie him to a chair. Once the victim was naked and tied up, petitioner stabbed him multiple times. He died as a result of the stabbing.[4]

---

[1] 603 F.3d 546 (9th Cir. 2010) (en banc).

[2] *Hayward*, 603 F.3d at 562.

[3] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

[4] Docket No. 15-3, p. 2.

### III.  GROUNDS RAISED/DEFENSES

In his Petition Feliz contends the Board erred in denying him parole, making four contentions:  (1) he has a liberty interest protected by the Due Process Clause; (2) the evidence is insufficient to support a finding of unsuitability for parole; (3) a lack of nexus between the evidence and the denial of parole; and (4) he has met all the factors demonstrating suitability for parole.  The State does not assert any affirmative defenses.[5]

### III.  DISCUSSION

In rejecting Feliz's arguments, the Los Angeles Superior Court held:

> The Board found petitioner unsuitable for parole after a parole consideration hearing held on August 8, 2006.  Petitioner was denied parole for one year.  The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety.  The Board based its decision on his commitment offense.
> The record reflects that there is some evidence that, "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." (Cal. Code Regs., tit. 15, §2402, subd. (c)(I)(D).)  This means that "the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of that offense." (*In re Scott* (2004) 119 Cal.AppAth 871, 891.)  An offense is more aggravated or violent when it involves severe trauma, "as where death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon, not resulting in immediate death or actions calculated to induce terror in the victim." (*Id* at 892.)  Here, petitioner inflicted multiple wounds with a knife, which did not result in immediate death.  He was naked and tied to a chair when the attack started to induce terror in the victim.  Because this crime involved severe trauma to the victim, it shows an exceptionally callous disregard for human suffering.
> The Board was also concerned that petitioner lacks understanding into the nature and magnitude of his actions. (Cal. Code Regs., tit. 15, §2402, subd. (d)(3).)  Petitioner has changed his version of the commitment offense for different parole suitability hearings.  At previous hearings, petitioner claimed that the victim was threatening him and he felt scared, despite the fact that the victim was tied to a chair at the time.  Petitioner pled guilty to murder.  Where guilt is

---

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

uncontested, a prisoner's version of the events may be some evidence he lacks remorse and understanding of the nature and magnitude of the offense. (*In re McClendon* (2004) 113 Cal.App.4th 315,322.). This supports the Board's denial.[6]

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual findings."[7] In its Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[8] In its response, the State argues that, because *Hayward* was wrongly decided and represents circuit law, not the law as established by the Supreme Court, this Court need not follow *Hayward* or the Ninth Circuit cases applying *Hayward*. The State, asserting that the order requiring that the evidence supporting the finding that the release of Feliz to parole status poses a current threat to public safety be identified is an improper question, declined to provide the required information.[9] This Court disagrees. This Court, a district court, is bound by the published decisions of the Ninth Circuit until those decisions are overruled or undermined by higher authority, e.g., an en

---

[6] Docket 15-3, pp. 2-3.

[7] *Cooke*, 606 F.3d at 1216.

[8] Docket No. 22, p. 2.

[9] If this were a single instance, this Court would be inclined to ignore the refusal to address *Hayward*. Unfortunately, this is not such an isolated incident. This Court has received several similar responses to its order in other parole cases that were held in abeyance pending the en banc decision in *Hayward*, e.g., *Walker v. Kramer*, Case No. 2:07-cv-00803-JKS, *Singer v. Sisto*, Case No. 2:08-cv-00048-JKS, and *Dewey v. Sisto*, Case No. 2:08-cv- 00580-JKS, of which this Court takes judicial notice. Fed. R. Evid. 201. Consequently, this Court must conclude that the position taken in this case represents the official position of the State of California, acting through its Attorney General.

banc decision of the Ninth Circuit, a Supreme Court decision, or subsequent legislation.[10]  This has not occurred.  This Court notes that if, as the State contends, *Hayward* were incorrectly decided, the appropriate remedy is to file a petition for a *writ of certiorari* in the Supreme Court within 90 days of the date the petition for rehearing in *Hayward* was denied.[11]  The 90-day period began to run June 2, 2010, when the Ninth Circuit denied Hayward's petition for a rehearing.[12]  As the time for filing a petition for *certiorari* had not yet expired, if the State contemplated seeking *certiorari*, the State could have requested this Court to grant additional time to comply with the Order.  Alternatively, the State could have preserved its arguments that *Hayward* was erroneously decided for further appellate review, and still complied with the express terms of the Order.  What the State could not do is what it did do in this case—ignore the clearly articulated

---

[10] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  A complication exists because the *Hayward* court predicated a federally protected liberty interest on California state statutes, regulations, and California Supreme Court decisions.  Thus, a California Supreme Court decision subsequent to *Hayward*, *Pearson*, and *Cooke* rejecting their reasoning might be highly relevant.  No such case has been identified.

[11] Supreme Court Rule 13.

[12] *Hayward v. Marshall*, Ninth Circuit Case No. 06-55392, Docket No. 120, of which this Court takes judicial notice.  Fed. R. Evid. 201.

requirements of *Hayward* and decline to obey this Court's specific order.[13]  In so doing, even if the Order was "improper," the State did so at its own peril.[14]

This Court treats the State's failure to point to the evidence in the record supporting the factors, other than the commitment offense, cited by the Board's finding that Feliz poses a present threat of danger to society as conceding that no such evidence exists.[15]

In its Order directing Respondent to answer, this Court, citing Rule 5 of the Rules Governing § 2254 Cases, directed Respondent to provide the transcript of the August 8, 2006, hearing, and any documents, reports or letters considered by the panel.  In a footnote to that

---

[13] Indeed, as a result of the failure of the State to comply with this Court's Briefing Order, the State appears to assume that this Court will mine the record to find sufficient evidence to support the decision of the California Supreme Court.  It is unquestionably the rule that the burden of establishing a violation of a constitutional right sufficient to warrant habeas relief is placed on the petitioner.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").  That does not, however, mean that the petitioner has the burden of proving a "negative," i.e., that something does not exist.  The State should not expect a federal district court to mine the record to find evidence that Feliz is currently dangerous, which, if found, would support a determination that, as required by *Hayward*, the California judicial decision approving the Board's decision rejecting parole was not an unreasonable application of the California some evidence requirement, or was not based on an unreasonable determination of the facts in light of the evidence.

[14] *See Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("until its decision is reversed for error by orderly review, either by itself or by a higher court, [a court's] orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.") (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (same); *United States v. United Mine Workers of America*, 330 U.S. 358, 293 (1947) (same).

[15] This Court recognizes that the court in *Hayward* ultimately affirmed the denial of parole.  The Attorney General and his subordinates know the record in the case.  They also know the Ninth Circuit's decision in *Hayward* and the California Supreme Court decisions in *Lawrence* and *Shaputis*.  If the record in this case could be reconciled with those cases and the denial of parole, competent counsel would have so argued.  Because the Attorney General is competent counsel, the State's failure to develop the argument lends support to only one conclusion:  that the record will not support a finding of present dangerousness.

Order the Court also provided an alternative—that if the State agreed that the transcript attached as an exhibit to the petition is complete and correct, a second copy need not be provided.[16]  In its Answer, the State declined to provide the requested documents, contending that those documents were not required under Rule 5.  The State has disregarded two Orders entered by this Court.  In the case of the Order directing that a transcript of the Board hearing be provided, this Court treats the State's refusal to provide the transcript as an admission that the transcript attached to the petition for relief in the Los Angeles Superior Court is complete and correct.

In denying Feliz parole, the Board in that part of the transcript provided to the Los Angeles Superior Court, held:

> **PRESIDING COMMISSIONER SHELTON**: [. . . .]  The Panel has reviewed all the information received and relied on the following circumstances in concluding, Mr. Feliz, that you are not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  We had a tough decision and a tough -- a lot of talking, and I want to pass on some things to you.  But what I want to do is let you know we're giving you a one-year denial.  I know it's not what you want to hear.  You have been doing an admirable job in a variety of areas.  But the issue that probably confounds me the most is how much insight you have for what you did and how much compassion you truly have for your victim.  I sat here and struggled, and a lot of what I do is struggle between my head and my heart and my [. . . .][17] room were attempting to stop you.  With regards to your prior record, as a juvenile, it was not substantive.  I will say substance abuse is.  You ran the streets, as you indicated.  Your social history is incredible; incredibly awful for a young child to live the way you had to live.  You started prostituting your self at a very young age.  Started using substance at a very young age.  And I think there's still a question for us as to the amount of violence that truly was in your background; especially as a child and being victimized.  As an adult, you were involved in opportunities; probation.  Those did not work real well for you.  You had several run-ins with the law and some convictions; theft, prostitution.  With regards to your institutional

---

[16] Docket No. 9.  The Court notes that in every copy of the transcript of the Board hearing pages 67 and 68, which constitute part of the decision, are missing.

[17] Omitted material reflects the missing pages, 67 and 68.

background, you have 12 115s.  The last in 1995 for marijuana.  You have six 128s.  The last in '89.  That's not a perfect discipline record, but you've done a good job of distancing yourself from those disciplinaries.  You haven't gotten anything for 11 years, and that's good.  With regards to self-help.  And I'm going to go into your positive aspects in a moment, because you've done a tremendous job in the institution.  I'm not concerned about your behavior in the institution, I'm just shaky about what it would be outside at the present time.  And I guess what I would like, to see you do with regards to your self-help is that you take a look at what motivated your actions that day.  The intensity of your anger, your frustration, your fear; whatever may have caused that.  I don't know.  You need to be able to come to terms with that, and probably, it would be especially helpful if at some point in time, you could share your struggles in that world.  Now (indiscernible) offense necessary.  You're not required to.  But your journey to that.  It's been a painful one for you.  I think you still have a little bit more work to do there to get to the (indiscernible) side.  Psychological report is fairly positive.  Doctor Davis considered you a low risk for violence in January of '05.  I don't know that that would change (indiscernible) think that would be positive (indiscernible).  With regards to your parole plans, you have letters from your mom and family and employment.  I would recommend before your next hearing to get upgraded letters with current dates. If there's any way that you could also, with regards to your employment letter, add --
      **DEPUTY COMMISSIONER SULLIVAN:** You're about to lose tape.  You have to say something to her.
      **DEPUTY COMMISSIONER ANDRES**:  Okay.
      [Thereupon, the tape was turned over.]
      **DEPUTY COMMISSIONER ANDRES:**  On record.
      **PRESIDING COMMISSIONER SHELTON:**  We were discussing.  parole plans.  And what I was suggesting is that with regards to the one you have for employment is that if there's a way for somebody to indicate what your income would be and what your job responsibilities will be.  We talked about PC 3042 responses.  Mr. Morrison is here representing the Los Angeles District Attorney's Office and was in opposition for parole at this time.  Like I said, Mr. Feliz, you have done an excellent job in the institution.  You work with PIA lens lab.  You have renewed your certificate every three years.  And if I did my math right, you're good until '08.
      **INMATE FELIZ:**  Yes, Ma'am.
      **PRESIDING COMMISSIONER SHELTON:**  You received your GED in '91.  You received certification in customer service through the course you took.  You have a vocation in silk screening.  You participated in NA and AA since '90, with a blip in '94, and then continuously on.  You participated in two groups of Stress Management, two of Anger management.  You participated in the PLATO series and FEMA courses until they wouldn't allow you to anymore due to a lack of a social security number.  Received a laudatory in February '06 for the

8

optical lab work you're doing as well as AA.  And participated in phases, which you indicated is a life plan program.  And though I applauded you for your vocational work, you received your GED.  You are, I think, prepared to take care of yourself on the outside, and you already indicated to us that you will continue with AA and NA or whichever.  I think you indicated you prefer NA.
      **INMATE FELIZ**:  Yes ma'am.
      **PRESIDING COMMISSIONER SHELTON**:  And that's a lifelong participation for you.  One of the other things that you might do this next year to help a bit on your parole plans is to find out through maybe your mother or your 2 brothers, where you can attend AA or NA; where the meetings are held, the times they're held and how you're going to get there.  That just takes you -- You have good parole plans, but that takes you a step further at this point.  Mostly what I'm concerned about, you know, in review, like I said, this is a one-year denial, is the degree of insight you have into this.  What is going to happen if a similar situation arises and how are you going to respond to it.  So if there's nothing that you feel comfortable with or available in the institution, get a couple of books to read and do some book reports at home for us with regards to that.  And I don't know if I'm being clear enough for you.  I really do want to be specific.  This is a very horrendous crime and you had a horrendous life behind it.  We want to make sure it doesn't repeat itself.  Commissioner?
      **DEPUTY COMMISSIONER ANDRES:**  Thank you.  Commissioner Shelton has expressed very well the things on my mind and that is this is very impressive that the recommendations last hearing were to get self-help, stay discipline free and earn positive chronos.  You've done all that.  There's no reason to believe that a Panel a year from now would not be equally impressed if you -- this year -- next coming year, you do more or less the same thing.  That would **--** That would be impressive to them as well.  And that's all I have to say, and to wish you good luck sir.
      **PRESIDING COMMISSIONER SHELTON**:  And good luck to you, sir.
      **INMATE FELIZ**:  Thank you.[18]

This Court must decide the case on the law as it exists at the time it renders is decision and, if the law changes while the case is pending, this Court applies the new rule.[19]  Thus, although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court

---

[18] Docket 15-1, pp. 116-122.

[19] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

"need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[20] By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[21] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[22] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[23] The Supreme Court has made clear that the

---

[20] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[21] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[22] *Williams*, 529 U.S. at 412.

[23] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[24]  Consequently, it appears that, under the mandate of *Hayward*, this Court must canvas and apply California law as it existed at the time of the state court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts applying state law—in effect serving as a super-appellate court over state court decisions.  This is in tension with the holdings of the Supreme Court.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[25]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[26]  This principle applied to federal habeas review of state convictions long before AEDPA.[27]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[28]  It does not matter that

---

[24] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[25] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[26] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[27] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[28] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence

the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[29]

At the time of the state court decision in this case, the California "some evidence" rule was embodied in *Rosenkrantz* and *Dannenberg*. Subsequently, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[30] and *In re Shaputis*.[31]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .] Due process of law requires that [the Board's] decision be supported by some evidence in the record. Only a modicum of evidence is required. Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board]. [. . . .] [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . . It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision.[32]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.) Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. [. . . .]
> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example

---

was erroneous.").

[29] *Id.* at 76.

[30] 190 P.3d 535 (Cal. 2008).

[31] 190 P.3d 573 (Cal. 2008).

[32] *Rosenkrantz*, 59 P.3d at 218. Quoted with approval in *Shaputis*, 190 P.3d at 585.

where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen.Code, § 3041, subd. (a).) "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.) [¶] Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." (Citation omitted.)[33]

In *Dannenberg* the California Supreme Court explained:

> [. . . .] So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[34]

The California Supreme Court then held:

> Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation. Accordingly, under *Rosenkrantz,* the

---

[33] *Id.* at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

[34] *Dannenberg*, 104 P.3d at 795.

Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[35]

The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[36] The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[37] In *Lawrence*, however, the California Supreme Court rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness," holding:

> "[W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety."[38]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was this language in *Lawrence* to which this Court alluded in its Order, which the State declined to address.

With respect to the underlying commitment offense, the applicable regulation provides:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

---

[35] *Id.* at 803.

[36] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[37] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[38] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

      (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
      (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
      (C) The victim was abused, defiled or mutilated during or after the offense.
      (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
      (E) The motive for the crime is inexplicable or very trivial in relation to the offense.[39]

The evidence clearly supports a finding that this case falls within the scope of (1)(C) and (D), and probably falls within the scope of (1)(E). Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Board. Judicial review of a decision denying parole is "extremely deferential."[40] Thus, under *Rosenkrantz* and *Dannenberg*, this Court could not say that the decision of the Los Angeles Superior Court was contrary to, or involved an unreasonable application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence. On the other hand, because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and *Shaputis* be applied, the decision of the Los Angeles Superior Court in this case was contrary to, or involved an unreasonable application of California law.

While the record in this case might support an argument that the denial of Feliz's parole can be reconciled with *Pearson* and *Cooke*, the State has rejected the opportunity this Court gave it to make that argument. Instead, the State decided to stand on its position that *Hayward*, *Pearson*, and *Cooke* were wrongly decided and apparently void.

---

[39] Cal. Code. Regs., tit. 15, § 2402(c).

[40] *Rosenkrantz*, 59 P.3d at 210.

The Board and the Los Angeles Superior Court clearly found that Feliz's crime was atypical and arguably that his motive trivial. This, standing alone, would be sufficient under *Rosenkrantz* and *Dannenberg*. It is not sufficient under *Lawrence* and *Shaputis*. *Hayward*, *Pearson*, and *Cooke*, require this Court to apply *Lawrence* and *Shaputis* as the Ninth Circuit interprets them. What the Board and the Los Angeles Superior Court did not do, and the State expressly declined to address, is explain how events ending in 1983 show that Feliz presented a significant risk to public safety in 2006, rendering determination of current dangerousness insufficient under *Lawrence* and *Shaputis*.[41] Thus, under *Hayward*, *Pearson*, *Cooke*, and *Pirtle*,[42] this Court is compelled to find that the Board's denial of parole violated Feliz's liberty interest protected by the Due Process Clause of the Fourteenth Amendment.[43]

## IV.  ORDER

Based upon the foregoing,

**IT IS HEREBY ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is **GRANTED**.

---

[41] This Court recognizes that *Lawrence* and *Shaputis* were decided in 2008, after the California Supreme Court denied a hearing; consequently, neither the Board nor the California courts could have considered them.

[42] *Pirtle v. California Board of Prison Terms*, 611 F.3d 1015 (9th Cir. 2010).

[43] In reaching this conclusion, this Court is mindful of the following significant problems: (1) the applicability of *Lawrence* and *Shaputis* to cases in which the state court decision became final prior to August 21, 2008; and (2) the appropriate scope of review by federal courts in federal habeas proceedings under 28 U.S.C. § 2254(d) of the application by the California courts of the California "some evidence" rule. In other words, to what extent may subsequent California cases modify the "liberty interest" established by California law and recognized in *Hayward*, *Pearson*, and *Cooke*.

**IT IS FURTHER ORDERED THAT** the denial of parole is vacated and this matter is remanded to the California Board of Parole Hearings for further proceedings consistent with the decisions of the California Supreme Court in *In re Lawrence*, 190 P.3d 535 (Cal. 2008), and *In re Shaputis*, 190 P.3d 573 (Cal. 2008),[44] as interpreted by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010), and *Pirtle v. California Board of Prison Terms*, 611 F.3d 1015 (9th Cir. 2010).

**IT IS FURTHER ORDERED THAT**, if the Board of Parole Hearings has not held a hearing within 120 days of the date of entry of this Order, the Secretary, California Department of Corrections and Rehabilitation, must release Feliz to parole status.

**IT IS FURTHER ORDERED THAT** nothing in this Order is intended to, nor may it be construed as, restricting or otherwise inhibiting, directly or indirectly, the authority of the Secretary, California Department of Corrections and Rehabilitation, to set restrictions or conditions on the grant of parole to the extent otherwise provided by the laws of the State of California.

The Clerk of the Court is to enter final judgment accordingly.

Dated:  January 6, 2011.

                                                           /s/ James K. Singleton, Jr.
                                                          JAMES K. SINGLETON, JR.
                                                          United States District Judge

---

[44] *See In re Prather*, 234 P.3d 541, 550-54 (Cal. 2010); *Haggard v. Curry*, --- F.3d ---, 2010 WL 4978842, *4-*5 (9th Cir. Dec. 9, 2010) (citing *Prather*).